UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Donald James Monaco,

Plaintiff,

vs.                                          REPORT AND RECOMMENDATION

United States Department of
Justice, Federal Bureau of Prisons,
Kathleen Hawk Sawyer, Director;
F.C.I. Waseca Warden T.C. Outlaw;
Waseca Clinical Director, Dr. Mark Gray;
Waseca Health Service Captain, USPHS,
Alan Jorgenson; F.P.C. Duluth Warden,
D.L. Stine; Duluth Clinical Director,
Dr. David Barton; Duluth Health Service
Captain, USPHS, Robert DeFrance;
Duluth Physician Assistant John Espinal;
Duluth Physician Assistant Phillip Polzin;
Duluth Safety Manager and Recycling
Supervisor, Chuck Wessberg,

Defendants.                    Civ. No. 03-1051 (JRT/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

I. Introduction

This matter came before the undersigned United States Magistrate Judge

pursuant to a general assignment, made in accordance with the provisions of Title 28

- 1 -

U.S.C. § 636(b)(1)(B), upon the Defendants' Motion to Dismiss or, in the alternative, for Summary Judgment.  For these purposes, the Plaintiff appears <u>pro</u> <u>se</u>, and the Defendants appear by Lonnie F. Bryan, Assistant United States Attorney.

For reasons which follow, we recommend that the Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment, be granted.

II.  <u>Factual and Procedural Background</u>

On April 1, 2003, the Plaintiff commenced an action in this Court against the Defendants, alleging violations of his Eighth Amendment rights.  We have previously described the facts giving rise to that Complaint as follows:

> The Plaintiff is a Federal prisoner, who is currently incarcerated at the Federal Prison Camp, in Duluth, Minnesota ("FPC-Duluth").  He originally commenced this action, pursuant to Title 28 U.S.C. §2241, by filing a Petition for a Writ of Habeas Corpus.  In an Order dated March 25, 2003, we directed the Petitioner to show cause why his Petition should not be dismissed as outside the jurisdiction of this Court.  See, <u>Docket No. 6</u>. Alternatively, we granted the Petitioner leave to file his claim, under the Federal analogue to Title 42 U.S.C. §1983 -- namely, under the doctrine enunciated in <u>Bivens v. Six Unknown Federal Narcotics Agents</u>, 403 U.S. 388 (1971) -- should he elect to amend his claim.  The Plaintiff heeded our cautionary, and subsequently filed a Complaint, under Section 1983, alleging Constitutional violations.  See, <u>Docket No. 7</u>.

- 2 -

In his Complaint, the Plaintiff asserts four Claims.   In Claim 1, the Plaintiff alleges that those Defendants, who are employed at the Federal Correction Institution in Waseca, Minnesota ("FCI-Waseca"), violated his Eighth Amendment right to be free from cruel and unusual punishment, by denying him stronger pain medication for his chronic migraine headaches.   On or about January 23, 2003, the Plaintiff was transferred from FCI-Waseca, to FPC-Duluth.

The Plaintiff's second Claim arises from events and omissions that the Plaintiff asserts occurred at FPC-Duluth, after his transfer from FCI-Waseca.  On February 24, 2004, the Plaintiff contends that he suffered "a classic migraine attack," and he presented himself to the medical staff at FPC-Duluth.  Complaint, at p. 3.  The Plaintiff maintains that certain other Defendants again denied his request for stronger pain medication.   In his third Claim, which the Plaintiff also alleges occurred on February 24, 2004, at FPC-Duluth, the Plaintiff contends that the Defendants ignored the seriousness of his migraine attack, and forced him to work in the kitchen.

Lastly, in Claim 4, the Plaintiff alleges that, on or about February 26, 2004, the Defendants reassigned the Plaintiff from his work in the kitchen, to the recycling center.  The Plaintiff states that he was transferred after he complained that he was not supposed to be serving food, or working in the kitchen, due to his hepatitis C liver disease.   On February 27, 2004, after working all day in the recycling center, on February 26, 2004, the Plaintiff again experienced serious pain symptoms.   He contends that certain members of the medical staff at FPC-Duluth ignored his complaints, and that the Defendants forced him to return to work, in violation of the Eighth Amendment.   The Plaintiff further alleges that his assignment to work in the

recycling center exacerbated his serious medical conditions, due to the pollutants and other hazards in the environment in which he is forced to work, which the Plaintiff also asserts violates the Eighth Amendment.

The Defendants seek the dismissal of the Plaintiff's claims on grounds that the Plaintiff has failed to exhaust his administrative remedies, that the Plaintiff does not allege any specific conduct of certain of the named Defendants, that other named Defendants are entitled to qualified or absolute immunity, and that the Plaintiff has failed to state a cognizable violation of the Eighth Amendment. In the alternative, the Defendants seek Summary Judgment on the Plaintiff's claims.

See, Report and Recommendation of July 1, 2004, Docket No.53.

On those facts, we recommended that the Plaintiff had failed to exhaust his administrative remedies with respect to certain of the claims raised in his Complaint -- namely, those claims identified as claims 2, 3, and 4. Guided by Robley v. Anderson, 2004 WL 742089 at *2 (D. Minn., March 4, 2004), we recommended that the Plaintiff be afforded an opportunity to amend his Complaint, in order to limit his claims to those which had been fully exhausted. The District Court adopted our recommendation on August 31, 2004, stating as follows:

[I]n light of the related nature of claims 1, 2, 3, and 4, the Court believes that plaintiff should be given the opportunity to decide whether he wishes to proceed at this time with claim 1 alone, or whether he wishes to have all of his claims considered together, once properly exhausted. Consequently, Plaintiff will be permitted the opportunity to

- 4 -

> amend his complaint to include only claim 1.  If plaintiff
> intends to proceed with this matter at this time, by filing an
> amended complaint involving only claim 1, he must do so
> by September 27, 2004.   If plaintiff does not file an
> amended complaint by September 27, this action will be
> dismissed without prejudice, for failure to exhaust.

Monaco v. Sawyer, 2004 WL 2066831, at *2 (D. Minn., August 31, 2004).

On September 10, 2004, the Plaintiff filed an Amended Complaint with the District

Court.  However, notwithstanding his assertions to the contrary, the Plaintiff did not

limit his allegations to those comprising Claim 1 of his previous Complaint.

Specifically, the Amended Complaint contained additional allegations that the

medical staff at FPC-Duluth failed to provide him with stronger pain medications for

his migraine headaches; that the medical staff at FPC-Duluth ignored his complaints

about migraine headaches and forced him to complete his work detail; and that the

medical staff at FPC-Duluth retaliated against his complaints of migraine attacks by

discontinuing his prescription for Imitrex Nasal Spray, in an effort to further his

suffering.

This Court recommended that the Plaintiff be allowed one final opportunity to

file a new pleading that set forth only his one fully-exhausted claim -- namely, the

Bivens claim against the FCI-Waseca employees.  See, Report and Recommendation,

Docket No. 69.  The District Court adopted our Report and Recommendation on

- 5 -

March 8, 2005.  See, <u>Order</u>, <u>Docket No. 69</u>.  The Plaintiff subsequently filed his newly

Amended Complaint on March 9, 2005, in which he asserted only his <u>Bivens</u> claim

against four of the named Defendants:  1) Kathleen Hawk Sawyer, the former Director

of the Federal Bureau of Prisons ("BOP"); 2) T.C. Outlaw, the Warden at FCI-

Waseca; 3) Dr. Mark Gray ("Dr. Gray"), the Plaintiff's treating physician and Clinical

Director at FCI-Waseca; and 4) Alan Jorgenson, the Chief Health Services

Administrative Captain and Public Health Services ("PHS") Officer at FCI-Waseca.

See, <u>Amended Complaint</u>, <u>Docket No. 71</u>.[1]

The events which comprise the factual basis for the Plaintiff's claim began on

October 7, 1992, when the Plaintiff visited the Providence Hospital in Anchorage,

Alaska, with complaints of migraine headaches.   See, Emergency Room Report,

<u>Declaration of Bruce Barton</u> ("<u>Barton Decl.</u>"), <u>Docket No. 78</u>, Att. A, Part.  6, at 10.

At that visit, the Plaintiff reported a history of migraine headaches, which dated back

to when he was seventeen (17) years old.  <u>Id.</u>  The emergency room report noted that,

---

[1]As the other Defendants were not explicitly named in the Plaintiff's Amended Complaint, we recommend that the FPC-Duluth personnel -- namely, F.P.C. Duluth Warden, D.L. Stine; Duluth Clinical Director, Dr. David Barton; Duluth Health Service Captain, USPHS, Robert DeFrance;  Duluth Physician Assistant John Espinal; Duluth Physician Assistant Phillip Polzin; and Duluth Safety Manager and Recycling Supervisor, Chuck Wessberg -- be summarily dismissed from this matter.

"[the Plaintiff] was given an injection of Demerol[2] and Phenergan,"[3] and, "[w]ithin one half hour, he noted complete relief of his headache." Id.  The treating physician instructed the Plaintiff to "go home and rest and avoid alcohol, caffeine, and tobacco." Id.  The additional medical records, that are dated before the Plaintiff's incarceration, reveal a history of reported migraine headaches, but do not reveal a treatment program of narcotic medications.

On July 23, 1999, the treating physician at the Federal Correctional Institute in Terminal Island, California ("FCI-Terminal Island") denied the Plaintiff's request for

---

[2]Demerol, or meperidine hydrochloride, is a narcotic analgesic with actions similar to those of Morphine.  The principal actions of therapeutic value are analgesia and sedation.  Demerol offers relief of moderate to severe pain, but "can produce drug dependence of the morphine type and therefore has the potential for being abused. Psychic dependence, physical dependance, and tolerance may develop upon repeated administration of meperidine and it should be prescribed and administered with the same degree of caution appropriate to the use of morphine." Physician's Desk Reference, at 2991 (57th Ed. 2003).

[3]Phenergen is used for "sedation and relief of apprehension and to produce light sleep from which the patient can be easily aroused," and as an adjunct to "meperidine or other analgesics for control of post-operative pain." Physician's Desk Reference, supra at 3432.

a standing order of Demerol, and was given Midrin instead.[4]  See, <u>Barton Decl.</u>, Att.

A., Part 7, at 25

In 1999, the Plaintiff, while housed at FCI-Terminal Island, complained of

"chronic headaches."  The treating consultant recommended Elavil,[5] and noted that

the Plaintiff have a "continue option for Tylenol with codeine #3."[6]  <u>Id.</u> at Att A., Part

3, at 53, 56.

On May 31, 2000, the Plaintiff arrived at FCI-Waseca with Hepatitis C, and

several medical complaints including migraines and joint pain.  He was provided with

information on how to obtain appointments, as well as the protocols for sick call.  <u>Id.</u>,

at ¶4.

---

[4]Midrin is a medication used for the relief of tension and vascular headaches. The drug is also indicated as "possibly" effective in the treatment of migraine headaches.  <u>Physician's Desk Reference</u>, supra at 3366.

[5]Elavil is the trademark name for amitriptyline hydrochloride, which is an antidepressant also used for the treatment of chronic pain. <u>Dorland's Illustrated Medical Dictionary</u>, at 63, 573 (29th Ed. 2000).

[6]Tylenol with codeine is a mixture of acetaminophen and codeine and is indicated for the relief of mild to moderate pain.  Codeine is an alkaloid opiate, and can similarly produce drug dependence of the morphine type.  <u>Physician's Desk Reference</u>, supra at 2507.

On June 1, 2000, the Plaintiff's prescription for Imitrex[7] was refilled.   The following day, the Plaintiff reported, during a psychiatric intake, that he had experienced multiple drug overdoses, and had a long history of opiate abuse.  Id. at ¶5; Att. A, Part 3, at 28-30.

On June 14, 2000, the Plaintiff met with Dr. Gray, and reported good results from the Imitrex spray.  The Plaintiff was then to follow up with the medical staff in the Neurology Care Clinic ("NCC"), every three (3) months.  See, Barton Decl., at ¶5

On September 8, 2000, the Plaintiff was seen in the NCC, and reported that he had experienced only three (3) migraines during that time frame, and that the Imitrex nasal spray was working well.  He refilled his Imitrex prescription on September 28, 2000.  Id. at ¶6.

On October 17, 2000, during a psychiatric consultation, the Plaintiff reported that he had been "multi-drug dependent" for twenty-five (25)years, and that he thought that drugs should not be illegal as they enhanced his life.  Id. at ¶7.

On December 4, 2000, the Plaintiff was seen in the NCC and was feeling well, and reported  that, when he had experienced headaches, the Imitrex spray worked

---

[7]Imitrex is indicated for the treatment of acute treatment of migraine headaches. Physician's Desk Reference, supra at 1546-47.

well.   He continued his Imitrex medication for treatment of his headaches  throughout April of 2002.  Id. at ¶¶8-10.

On April 2, 2002, the Plaintiff was seen, on an urgent basis, by a physician's assistant and he reported that he was experiencing between one (1) and two (2) headaches a month, while also experiencing nausea and light sensitivity with increasing frequency.  Id. at ¶10.  The Plaintiff was offered Toradol [8] and Phenergen. He refused these medications, stating that narcotics were the only thing that worked for him.  The Plaintiff was subsequently idled from his work assignment.  Id. at ¶10; Att. A, Part 1, at 26-27.

On April 17, 2002, Dr. Gray met with the Plaintiff, who reported that, although the Imitrex and aspirin were helpful, "sometimes he needs more."  Id. at Att A, Part 1, at 25.   The Plaintiff insisted that he wanted narcotics -- namely, Tylenol with codeine, and a shot of demerol.  Id.  Dr. Gray recommended that the Plaintiff try the Toradol, and Phenergen, if he needed greater relief than that offered by the Imitrex and aspirin.  Dr. Gray also advised the Plaintiff that, if he were feeling depressed, he could be referred to psychiatry.

_____

[8]Toradol is a nonsteroidal anti-inflammatory drug indicated for the short term, i.e., less than five (5) days, for the treatment of moderately severe acute pain that requires analgesia at the opioid level.  Physician's Desk Reference, supra at 2942.

On May 10, 2002, the Plaintiff was seen in the NCC with no changes in his basic condition, while claiming to regularly use Imitrex.  Id. at ¶12.  The Plaintiff claimed to have used the Imitrex regularly, which was supplemented with aspirin to address his pain.  Id. at Att A, Part 1, at 24.  However, the Plaintiff insisted that he required narcotics to address his migraine headaches.  Id.

On that same day, the Plaintiff presented an Inmate Request to Staff, which asked for a second opinion about the denial of stronger pain medication, as follows:

> I respectfully request to see a neurologist about my chronic migraines and/or the opinion of a second medical doctor about the denial of stronger pain medication as I've successfully used and have been prescribed by my regular and emergency room physicians over the past 30 plus years. According to the Supreme Court case Estelle v. Gamble [citation omitted], prison officials can be in violation of 8th Amendment Constitutional Rights which protects from "Cruel and Unusual Punishment" if found to be in "Deliberate Indifference" to "Serious Medical Needs."

Id. at Att. A, Part 7, at 24.

Dr. Gray's response stated:

> Since you have rarely requested refills on Imitrex, I would assume you haven't needed it often.  You have always said it helps.  The fact that you have refused to even try injectable Toradol is disturbing.  We do have other medications for chronic use, we could try.  Narcotics are a

> poor choice.  A neurologist can be consulted but we should really use what is at our ready disposal before we go this route.

Id.

On August 7, 2002, the Plaintiff reported that he was "feeling well," and that he had not experienced any migraine headaches "this quarter."  Id. at ¶12.

The Plaintiff was next seen on September 29, 2002, at which time, he complained of a migraine headache accompanied by blurry vision and disorientation. Id.  The medical report reflected that the Plaintiff appeared with "no apparent disorientation," as the Plaintiff was "very articulate and specific in his wants and statements."  Id. at Att. A, Part 1, at 22.  The Plaintiff was given Imitrex and aspirin, and given an idle for the rest of the day, and told to return to sick call if the headache continued.  There is no record of the Plaintiff returning on the following day.

On November 4, 2002, the Plaintiff failed to show up for his NCC appointment, so it was rescheduled and the Plaintiff's prescription for Imitrex and aspirin were refilled.  Id. at ¶13.

On December 3, 2002, the Plaintiff was seen in the NCC.  The Plaintiff reported that he continued to use Imitrex, and that it "helped some."  Id.  The Plaintiff demanded narcotics for his migraine headaches, and refused to consider Toradol

because he felt it was experimental.  Id.  On January 22, 2003, the Plaintiff was transferred to FPC-Duluth.  Id. at ¶14.

As noted  previously, the Plaintiff has exhausted his administrative review remedies concerning his Eighth Amendment claim that arises from the Plaintiff's denial, while at FCI-Waseca, of stronger pain medication for his chronic migraine headaches.  See, Order, Docket No. 59, at 4.

### III.  Discussion

A.    Standard of Review.  Summary Judgment is not an acceptable means of resolving triable issues, nor is it a disfavored procedural shortcut when there are no issues which require the unique proficiencies of a Jury in weighing the evidence, and in rendering credibility determinations.  See, Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986); Midwest Oilseeds, Inc. v. Limagrain Genetics Corp., 387 F.3d 705, 711 (8th Cir. 2004), cert. denied, --- U.S. ---, 125 S.Ct. 1860 (2005).  Summary Judgment is appropriate when we have viewed the facts, and the inferences drawn from those facts, in a light most favorable to the nonmoving party, and we have found no triable issue.  See, Eide v. Grey Fox Technical Servs. Corp., 329 F.3d 600, 604 (8th Cir. 2003); Philip v. Ford Motor Co., 328 F.3d 1020, 1023 (8th Cir. 2003); United Fire & Casualty Co. v. Garvey, 328 F.3d 411, 413 (8th Cir. 2003).  For these purposes, a

disputed fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case, while a dispute is "genuine" if the evidence is such that a reasonable Jury could return a verdict for the nonmoving party.  See, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Planned Parenthood of Minnesota/ South Dakota v. Rounds</u>, 372 F.3d 969, 972 (8th Cir. 1004);  <u>Fenney v. Dakota, Minnesota & Eastern R.R. Co.</u>, 327 F.3d 707, 711 (8th Cir. 2003)

As Rule 56(e) makes clear, once the moving party files a properly supported Motion, the burden shifts to the nonmoving party to demonstrate the existence of a genuine dispute.  In sustaining that burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial."  <u>Rule 56(e), Federal Rules of Civil Procedure</u>; see also, <u>Anderson v. Liberty Lobby, Inc.</u>, supra at 256; <u>Eddings v. City of Hot Springs, Ark.</u>, 323 F.3d 596, 602 (8th Cir. 2003).  Moreover, the movant is entitled to Summary Judgment where the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  <u>Celotex Corp. v. Catrett</u>, supra at 322; see also, <u>Forest Park II v. Hadley</u>, 408 F.3d 1052, 1057 (8th Cir. 2005); <u>Mercer v. City of Cedar</u>

Rapids, 308 F.3d 840, 843 (8th Cir. 2002); Hammond v. Northland Counseling Center, Inc., 218 F.3d 886, 891 (8th Cir. 2000).  No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, supra at 323; see also, Sallis v. University of Minnesota, 408 F.3d 470, 474 (8th Cir. 2005); Davis v. U.S. Bancorp, 383 F.3d 761, 768 (8th Cir. 2004); Bell Lumber and Pole Co. v. United States Fire Ins. Co., 60 F.3d 437, 441 (8th Cir. 1995).

B.     Legal Analysis.  The crux of the Plaintiff's claim lies in his allegation that the Defendants adopted an improper course of treatment for his migraine headaches, and that he has been denied "the decency of receiving previously perscribed [sic] pain medications that have been completely successful at nuetralizing [sic] his migraine pain in the past." Petitioner's Response to the Government's Motion to Dismiss, Docket No. 80, at 3.  While the Plaintiff concedes that the medical record reflects that he was examined on many different occasions, in order to treat his migraine headache attacks, he argues that the Defendants' denial of stronger, narcotic-based medications was due to a "deliberate indifference," which has "unnecessarily caused [the Plaintiff] to suffer from further extreme pain during migraine attacks that could have been prevented ." Id.

- 15 -

In support of his argument, the Plaintiff notes that he has "always been successfully treated with stronger Demerol pain killing injections by **all** former emergency room hospital doctors throughout his entire life," and that "he has also been successfully prescribed stronger Tylenol-Codeine #3 pills as needed for severe migraine pain by FBOP doctors * * * just prior to his transfer to Waseca." Amended Complaint, Docket No. 71, at 2 (emphasis in original). He maintains that the failure to provide him with the stronger medication, during his migraine attacks, constituted "a deliberate[] indifferen[ce] to his serious medical needs in violation of the 8th Amendment under cruel and unusual punishment." Id. The Plaintiff also claims that "this ongoing malfeasance amounts to officially sanctioned neglect which constitutes a prolonged sort of corporal punishment in violation of the 8th Amendment, which rests upon the fundamental considerations of human decency." Id.

The Defendants respond by underscoring that they are entitled to an Order dismissing the Complaint, or granting Summary Judgment, because: 1) the Plaintiff has not alleged facts sufficient to state a claim under the Eighth Amendment for which relief can be granted; 2) the Defendants are entitled to qualified immunity; 3) the Defendant Jorgenson is statutorily immune for providing medical care; and 4) the

Plaintiff's claims against the Defendants Kathleen Hawk Sawyer ("Sawyer"), and T.C. Outlaw ("Outlaw"), are impermissibly based upon a theory of respondeat superior.

The Plaintiff has strenuously countered that the Defendants' conduct constitutes a deliberate indifference to his medical needs, and that the doctrine of qualified immunity does not shield the Defendants from liability. See, Petitioner's Response to the Government's Motion to Dismiss, at 5-7.

When qualified immunity is asserted in a Bivens/Section 1983 action, we "must first consider the threshold question of whether, construed in a light most favorable to the party asserting the injury, the facts alleged show the officer's conduct violated a constitutional right." Andrews v. Fuoss, 417 F.3d. 813, 816 (8th Cir. 2005), quoting Crow v. Montgomery, 403 F.3d 598, 601 (8th Cir. 2005); see Wilson v. Layne, 526 U.S. 603 (1999) [citations omitted]. "Only then do we ask whether that right was clearly established at the time of the alleged violation." Id.; see Coonts v. Potts, 316 F.3d 745, 750 (8th Cir. 2003), citing Siegert v. Gilley, 500 U.S. 226, 232 (1991). Here, we find no constitutional violation but, nonetheless, we proceed to address the qualified immunity question in the interests of completeness.

      1.    The Eighth Amendment Claim. It is well-established that deliberate indifference to a prisoner's serious medical needs is prohibited by the

Eighth Amendment.   See Estelle v. Gamble, 429 U.S. 97, 104-05 (1976).   "A prisoner's Eighth Amendment rights are violated if prison officials show 'deliberate indifference' to the prisoner's 'serious medical needs.'"   Olson v. Bloomberg, 339 F.3d 730, 735 (8th Cir. 2003), quoting Estelle v. Gamble, supra at 106.   To prevail on a claim of constitutionally inadequate medical care, an inmate must "demonstrate (1) that [he] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs."   Dulaney v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997), citing Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997).   "As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment."   Id.

"Deliberate indifference may be manifested by prison doctors in responding to the prisoner's needs or by prison officials in intentionally denying or delaying access to medical care or intentionally interfering with prescribed treatment."   Meloy v. Bachmeier, 302 F.3d 845, 848 (8th Cir. 2002).   However, "[t]he prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation."   Jolly v. Knudsen, 295 F.3d 1094, 1096 (8th Cir. 2000), quoting Estate of Rosenburg v.

<u>Crandell</u>, 56 F.3d 35, 37 (8th Cir. 1995), see also, <u>Roberson v. Bradshaw</u>, 198 F.3d 645, 647 (8th Cir. 1999)("'Mere negligence or medical malpractice, however, are insufficient to rise to a constitutional violation.'"), quoting <u>Dulany v. Carnahan</u>, supra at 1239; <u>DeGidio v. Pung</u>, 920 F.2d 525, 532 (8th Cir. 1990)("[T]he eighth amendment does not transform medical malpractice into a constitutional claim.").

Here, the Plaintiff has failed to establish a genuine issue of material fact that would allow him to recover on an asserted Eighth Amendment violation.  Specifically, aside from the Plaintiff's bare allegations, there is simply no evidence, in this Record, that the Defendants deliberately disregarded his medical needs.  From May 31, 2000, until his transfer from FCI-Waseca, the Plaintiff was examined on several occasions concerning his complaints of migraine headaches.  On each of those occasions, some action was taken by medical personnel to respond to the Plaintiff's medical needs.  Such actions included providing the Plaintiff with a number of prescription drugs -- namely, the Imitrex nasal spray -- which are designed to alleviate pain; and he was offered other prescribed medications, and idles from work and other physical activities.

The Plaintiff's chief complaint relates to the "conservative" course of treatment, that was adopted by the Defendants, in not recommending the use of morphine-type

pain relievers, such as Codeine or Demerol.  However, the Record reflects that the prescribed pain relievers -- namely, the Imitrex spray -- worked quite well for the Plaintiff, in offering acceptable relief from pain.  Accordingly, Dr. Gray recommended that a conservative course of treatment, encompassing the use of aspirin, Imitrex, and potentially Toradol, was the proper course.  Barton Decl, at Att. A, Part 7, at 24.

The Plaintiff attempts to undermine the propriety of Dr. Gray's medical opinion by pointing to the more aggressive treatment strategy that was adopted by a medical consultant, at FCI-Terminal Island, and during his visit to an emergency room in 1992, in Anchorage, Alaska.  Unfortunately for the Plaintiff, the treatment strategy, which was adopted by medical personnel at FCI-Waseca, was in all likelihood a continuation of the same treatment strategy employed by staff at FCI-Terminal Island, as the record notes that his prescription for Imitrex was refilled upon his arrival at FCI-Waseca, and also that the FCI-Terminal Island physician had denied the Plaintiff's request for a standing order of Demerol.  We also note that the Plaintiff did not renew his request for stronger medication until nearly two (2) years after his arrival at FCI-Waseca and, even then, he had reported that the Imitrex was working well in managing his migraine attacks.

Therefore, the Plaintiff has failed to raise a genuine issue of material fact that the Defendants' course of treatment was somehow improper, let alone deliberately indifferent. Notably, medical personnel at FCI-Waseca were not beginning anew the process of treating the Plaintiff's migraines, but had the benefit of nearly two (2) years of treatment records for his migraine headaches, which included results of treatment methods that had been employed during that time. Therefore, we may draw no inference, from the decision of the medical consultant at FCI-Terminal Island, and a one-time emergency room visit, to proceed with a more aggressive treatment strategy as to the Plaintiff's migraine headaches, that the medical and administrative staff, at FCI-Waseca, were deliberately indifferent to the Plaintiff's medical needs.

As a consequence, the evidence in this Record establishes that the conservative treatment, which was adopted by the Defendants, was appropriate and, in any event, was not deliberately indifferent. See, Logan v. Clarke, 119 F.3d 647, 649-50 (8th Cir. 1997)(Where prison doctors treated inmate on numerous occasions and offered him variety of pain killers, prison doctors were not deliberately indifferent.); Camberos v. Branstad, 73 F.3d 174 177 (8th Cir. 1995)(Prison nurses were not deliberately indifferent because they chronicled inmate's numerous medical complaints, often referred him to a physician's assistant, and sent him to outside hospital seven times

for further treatment); <u>Long v. Nix</u>, 86 F.3d 761, 765 (8th Cir. 1996) (Inmates do not have constitutional right to particular type of treatment; nothing in Eighth Amendment prevents prison doctors from exercising independent medical judgment.).

Since we find no genuine issue of material fact that would allow the Plaintiff to prove a constitutional violation, we recommend that the Defendants' Motion be granted, and the Complaint be dismissed. Further, even if the alleged conduct were sufficient to raise a constitutional claim, Summary Judgment would still be proper, since the Defendants are entitled to qualified immunity.

2.    <u>Qualified Immunity</u>.   Government officials, who are performing discretionary functions, are generally shielded from liability for civil damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. See, <u>Wilson v. Layne</u>, 526 U.S. 603, 609 (1999); <u>Young v. Harrison</u>, 284 F.3d 863, 866 (8th Cir. 2002); <u>Winters v. Adams</u>, 254 F.3d 758, 766 (8th Cir. 2001). "To withstand a claim of qualified immunity at the summary judgment stage, a plaintiff must assert a violation of constitutional or statutory right; that right must have been clearly established at the time of the violation; and given the facts most favorable to the plaintiff, there must be no genuine issue of material fact as to whether a reasonable officer would have known that

alleged action indeed violated that right." <u>Mettler v. Whitledge</u>, 165 F.3d 1197, 1202 (8th Cir. 1999); see also, <u>Young v. Harrison</u>, supra at 866-67.

"[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in the light of the legal rules that were 'clearly established' at the time it was taken." <u>Wilson v. Layne</u>, supra at 614. The contours of the constitutional right at issue "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right," but "[t]his is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in light of pre-existing law, the unlawfulness must be apparent." <u>Anderson v. Creighton</u>, 483 U.S. 635, 641 (1987). Thus, "[t]he doctrine 'gives ample room for mistaken judgments but does not protect the plainly incompetent or those who knowingly violate the law.'" <u>Bagby v. Brondhaver</u>, 98 F.3d 1096, 1098 (8th Cir. 1996).

Here, even though we have concluded that the Defendants' treatment of the Plaintiff did not violate the Constitution, even if it had, the Defendants are clearly entitled to qualified immunity, as the unlawfulness of that treatment was far from apparent. See, <u>Logan v. Clarke</u>, supra at 649-650; <u>Camberos v. Branstad</u>, supra at

177; <u>Long v. Nix</u>, supra at 765.  Accordingly, Summary Judgment is also warranted by the doctrine of qualified immunity.

NOW, THEREFORE, It is –

RECOMMENDED:

That the Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment [Docket No. 75], be granted.

Dated:  January 30, 2006                       s/Raymond L. Erickson
                                               Raymond L. Erickson
                                               CHIEF U.S. MAGISTRATE JUDGE

## NOTICE

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than February 16, 2006**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing by no later than **February 16, 2006**, unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.